UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

| | |
|---|---|
| WILLIAM NASH, individually and on behalf of all other persons similarly situated, )))) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 09-079 S |
| CVS CAREMARK CORP. and HOLIDAY CVS, LLC, )) | |
| Defendants. ) | |

_____

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Plaintiff pleads this lawsuit for overtime benefits as a "collective action" under the Fair Labor Standards Act ("FLSA"). He purports to act on behalf of himself and "other employees similarly situated" pursuant to 29 U.S.C. § 216(b). After one supposedly "similarly situated" party opted in to the case, Defendants presented both that person and Plaintiff with offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. The opt-in party accepted the offer and is no longer part of the case; Plaintiff rejected the offer, but does not dispute that it was adequate to cover his damages. Defendants moved to dismiss the suit on grounds that the Rule 68 offer mooted Plaintiff's claim. However, since that time, other

parties have opted into this action and wish to have their claims resolved as part of a "collective action" with Plaintiff.

On November 13, 2009, Magistrate Judge Lincoln D. Almond issued a Report and Recommendation ("R&R") concluding that the case was not moot and should not be dismissed. (See R&R, Doc. No. 31, Nov. 13, 2009.) Presently before the Court is Defendants' objection to the R&R. The relevant facts, procedural background and analysis are contained the R&R. For the reasons outlined below (in addition to those articulated by Judge Almond), the Court denies Defendants' objection and adopts the R&R in full.

## I.   Rule 68

Nothing in the text of Rule 68 compels dismissal of a case for lack of subject matter jurisdiction when a plaintiff rejects an adequate offer of judgment. Rather, the Rule creates what amounts to a penalty scheme when a plaintiff moves forward with litigation despite being offered the maximum damages she can hope to obtain at trial. "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Of course, as a practical matter, in some circumstances a Rule 68 offer may "eliminate[] a legal dispute upon which federal jurisdiction can be based," because "[y]ou cannot persist in suing after you've won."

Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, 1015 (7th Cir. 1999).   But this does not transform Rule 68 into an escape hatch from every lawsuit.   Rather, as this case makes clear, whether a controversy becomes moot following a Rule 68 offer depends on the factual circumstances, the cause of action, and the procedural status of the claims at issue.   Moreover, nothing in Rule 68 itself suggests that it should be used as a vehicle for sabotaging claim-aggregating devices like 29 U.S.C. § 216(b) and Rule 23.   See Fed. R. Civ. P. 1.   (explaining that the Federal Rules of Civil Procedure should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

## II.   The holding of Cruz v. Farquharson does not control this case

The Court agrees with Judge Almond that Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001), in which the First Circuit approved the dismissal of a Rule 23 action as moot, is distinguishable.   Cruz emphasized that between the date the plaintiffs in that case received "complete relief," and the date the district court dismissed the case as moot, "no new plaintiffs tried to intervene, and the named plaintiffs made no effort to amend their complaint to add new parties."   Cruz, 252 F.3d at 533.   That is not so here.   Four additional parties have, in fact, "tried to intervene" as "similarly situated"

plaintiffs by submitting their consents for the Plaintiff to pursue claims on their behalf.

As Judge Almond noted, where even one similarly-situated plaintiff opts in to an FLSA suit after the rejection of a Rule 68 offer, courts "have refused to permit defendants to moot putative FLSA collective actions."  Yeboah v. Central Parking Sys., No. 06 CV 0128 (RJD)(JMA), 2007 WL 3232509, at *3 (E.D.N.Y. Nov. 1, 2007); see Reyes v. Carnival Corp., No. 04-21861-CIV., 2005 WL 4891058, at *2 (S.D. Fla. May 25, 2005) (refusing to dismiss FLSA action where "other plaintiffs . . . opted in to [the] suit [after] the offer of judgment was made"); Roble v. Celestica Corp., 627 F. Supp. 2d 1008, 1013-14 (D. Minn. 2007) (finding that identifying opt-ins sustained jurisdiction); Rubery v. Buth-Na-Bodhaige, Inc., 494 F. Supp. 2d 178, 179-80 (W.D.N.Y. 2007) (denying motion to dismiss where more than fifty people had filed consents to join FLSA action). This is true even if, as here, there is no dispute about the adequacy of the offer.  See Yeboah, 2007 WL 3232509, at *5 (explaining that even if the plaintiff could not dispute the sufficiency of the judgment, "it neither mooted plaintiff's FLSA claim nor deprived [the court] of subject matter jurisdiction," because of the "presence of opt-ins.")[1]

---

[1] Of course, a lowball Rule 68 offer cannot moot a case. Defendants attempt to distinguish Yeboah on this basis; there,

Defendants contend that the opt-ins cannot be considered "plaintiffs" or "parties" to the suit for purposes of any exception to mootness carved out by <u>Cruz</u>.  <u>See</u> <u>Cruz</u>, 252 F.3d at 533.  <u>Cruz</u> stressed that there had been no "decision on class certification" under Rule 23, appearing to require a formal grant of class status in order to preserve a controversy after named parties obtain full relief.  Here, the case has not yet reached the equivalent stage in the § 216(b) context: "preliminary collective action certification," which requires an initial demonstration that the plaintiff "is 'similarly situated' to the other members of the proposed class."  <u>Poreda v. Boise Cascade, L.L.C.</u>, 532 F. Supp. 2d 234, 238 (D. Mass. 2008).  In the absence of preliminary certification, Defendants argue, Plaintiff has no procedural right to act on behalf of purported "similarly situated" parties.  "[A] § 216(b) plaintiff . . . presents only a claim on the merits. . . . [and] [i]n contrast to the Rule 23 plaintiff, a § 216(b) plaintiff has no claim that he is entitled to represent other plaintiffs." <u>Cameron-Grant v. Maxim Healthcare Servs., Inc.</u>, 347 F.3d 1240, 1249 (11th Cir. 2003).

---

the plaintiff did contest whether the offer provided full relief.  Nevertheless, as the language quoted in the parenthetical statement above demonstrates, the alleged inadequacy of the offer was not necessary to the holding in <u>Yeboah</u>.

In other words, Defendants insist, without the only safe harbor arguably warranted by Cruz — collective action status — this lawsuit died the moment that Plaintiff rejected his Rule 68 offer.  At that time, there were no other opt-ins with live claims, and plaintiff had no right to stand in for anyone else. Later opt-ins could not resurrect the action once it expired.

This logic has some superficial appeal.  But its limitation is that, if true, employers could always "use Rule 68 as a sword . . . and avoid[] ever having to face a collective action." Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 919 (5th Cir. 2008).  Congress clearly did not intend such an "anomaly" in enacting § 216(b).  See id.  Neither does Cruz, which concerns Rule 23, require the result Defendants urge here, which would effectively thwart Congress' preference to "avoid multiple lawsuits where numerous employees" allege FLSA violations. Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003).

The Court recognizes that Cruz may create some tension with the underlying rationale for decisions allowing § 216(b) opt-ins to preserve jurisdiction.  As explained by the Fifth Circuit in Sandoz, at bottom those cases rest on what is known as the "relation back" doctrine.  See Sandoz, 553 F.3d at 921; see, e.g., Yeboah, 2007 WL 3232509, at *3 (citing Weiss v. Regal Collections, 385 F.3d 337, (3d Cir. 2004), a Rule 23 case dealing with the "relation back" doctrine).  Sandoz acknowledged

6

the quandary raised by Cameron-Grant: a named FLSA plaintiff "cannot represent any other employees until they affirmatively opt in to the collective action." Sandoz, 553 F.3d at 919 (citing Cameron-Grant, 347 F.3d at 1249.). "If our analysis stopped there," the court reasoned, "[the plaintiff's] case would be moot," because she had received an adequate offer of judgment before any opt-ins joined the case. Id. Nevertheless, the court cited Sosna v. Iowa, 419 U.S. 393 (1975), as providing a solution. There, the Supreme Court observed that a Rule 23 controversy might become moot "before the district court can reasonably be expected to rule on a certification motion." Id. at 402 n.11. Depending on the circumstances, in such instances class certification might "be said to 'relate back' to the filing of the complaint," which would preserve jurisdiction. Id. at 402 n.11. Sandoz found that the "relation back" doctrine was just as appropriate for § 216(b) as Rule 23, because both types of actions were vulnerable to strategic mooting by Defendants. Accordingly, "there must be some time for a[n FLSA] plaintiff to move to certify a collective action before a defendant can moot the claim through an offer of judgment." Sandoz, 553 F.3d at 921.

Defendants fairly point out that Cruz did not approve of such an approach to Rule 23, and in fact took a narrow view of Sosna. The holding in Sosna was that jurisdiction did not

disappear when a named plaintiff's claim became moot after certification of a class with live controversies.  Sosna, 419 U.S. at 402.  Cruz stated outright that the "holding in Sosna" was not applicable, because the plaintiffs in Cruz had not obtained class certification.  Cruz, 252 F.3d at 534.  At the same time, Cruz did not address the footnote in Sosna explaining the "relation back" idea.  Furthermore, no First Circuit decision has considered the question of whether it would be proper to use the "relation back" approach in the context of § 216(b).[2]

In the Court's view, applying the "relation back" doctrine is appropriate in this case.  Plaintiff represents he has not yet moved for preliminary certification because he has been busy opposing Defendants' efforts to transfer venue and dismiss the case, which they commenced less than a month after the Complaint was filed.  Under the "relation back" doctrine, the opt-ins who

---

[2] To be fair, it does appear that the First Circuit takes a narrower view of the doctrine than Sandoz does.  The cases implicitly frame it as a subset of the "capable of repetition, yet evading review" exception to mootness.  In Gerstein v. Pugh, 420 U.S. 103 (1975), the Supreme Court cited Sosna's "relate back" footnote in justifying jurisdiction when the nature of the alleged injury was transient — assuring the mootness of named plaintiffs' claims prior to resolution — but a class of live claims was certain to persist.  See Gerstein, 420 U.S. at 110 n.11.  In, Cicchetti v. Lucey, 514 F.2d 362, 367 (1st Cir. 1975), the First Circuit cited Gerstein as the typical example of when "relation back" is appropriate.  Cruz simply stated that the case before it was unlike Gerstein (although, again, without mentioning the "relate back" mechanism specifically).  See Cruz, 252 F.3d at 535.

appeared after Plaintiff rejected the Rule 68 offer sustain jurisdiction; this will give Plaintiff the opportunity to seek provisional certification without "undue delay" after the entry of this Order.  Sandoz, 553 F.3d at 921 (quoting Weiss, 385 F.3d at 348).  This, in turn, will enable "due deliberation" on the issue of whether Plaintiff is the appropriate representative of a collective action.  See Weiss, 385 F.3d at 348.

## III. Policy considerations

As discussed, and as Judge Almond noted, granting dismissal in these circumstances would impair the Congressional preference for collective actions embodied in 216(b).  The Court offers some additional comments on this topic below.  But there is also a second policy consideration that favors affirming the R&R.  Specifically, the present motion underscores the unique danger of tactical manipulation in FLSA cases.  Thus, as explained below, to the extent Cruz could be read to establish a broad mootness regime that reaches beyond the Rule 23 context, an exception for FLSA actions is warranted.

To begin with, it is clear that allowing Defendants to "pick off" named FLSA plaintiffs one-by-one encourages manipulation of cases and ultimately of the federal courts.  See Sandoz, 553 F.3d at 919.  One court in Illinois described the ways employers can hamstring collective actions if allowed to snuff named plaintiffs' claims using Rule 68:

9

> [The] defense strategy creates a virtually unwinnable situation for plaintiffs in collective or class action lawsuits.  Defendant makes an offer of "judgment" to Plaintiff, then alleges that the action is moot. Plaintiff therefore must either pursue discovery very early in the case, when a court likely will deem it premature, or seek class certification and/or notice before discovery, which runs the risk of harming the interest of those as-yet undiscovered class members.

Reed v. TJX Cos., NO. 04 C 1247, 2004 WL 2415055, at *3 (N.D. Ill. Oct. 27, 2004).  The FLSA enforcement scheme clearly does not envision such a minefield.  Section 216(b) does not require plaintiffs to petition for provisional certification of a "collective action" when filing a complaint.  In fact, the final ruling on whether the named plaintiff may maintain a "collective action" usually occurs "after discovery is complete."  Poreda, 532 F. Supp. 2d at 239.  The collective action process "should be able to 'play out' according to the directives" of § 216(b) and the cases applying it, to permit "due deliberation by the parties and the court" on collective action certification.  See Weiss, 385 F.3d at 347-48 (discussing the Rule 23 process).

The moot-and-dismiss tactic also facilitates forum-shopping and plaintiff-shopping.  At oral argument, Defendants confirmed that multiple lawsuits regarding the overtime claims asserted here are pending in different jurisdictions around the country. Permitting use of Rule 68 to moot cases in one or more forums and thereby cherry-pick another, potentially with the weakest collective action representative, upends the longstanding

10

principle that, in cases based on federal-question jurisdiction, the plaintiff is the "master of the claim." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

Defendants might object that Rule 23 actions present the same worries. After all, Rule 23 advances a policy similar to § 216(b): the efficient resolution of widespread small claims dependent on common legal and factual questions. Arguably, the opt-out structure of Rule 23 embodies an even firmer commitment to aggregating claims, in contrast to the opt-in rule for § 216(b) cases. And if this is true, how can the cited policies provide any basis to distinguish Cruz, where the same concerns were not enough to stave off dismissal of a Rule 23 action? In that case, the plaintiffs alleged, there was a large pool of class members, and the defendant had defused class action litigation by mooting the claims of the named parties. See Cruz, 252 F.3d at 535.

The answer to the question above is that FLSA actions are more vulnerable to manipulation than Rule 23 actions. For the latter, filing a complaint tolls the statute of limitations for all alleged class members, whether they know of the lawsuit or not. See Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class . . . ."). In contrast, parties alleged to be "similarly situated" in a §

11

216(b) case must affirmatively opt in to toll the limitations period.  See 29 U.S.C. § 256 (explaining that an FLSA action is not considered to be commenced for a similarly situated party until he submits written consent to join the case); Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1136-37 (D. Nev. 1999) ("[A]ll potential plaintiffs to § 216(b) actions must file their consent to the suit to toll the statute of limitations.") (emphasis in original).

This means that defendants can bleed value out of a large pool of outstanding FLSA claims in a way they cannot with a comparable group of Rule 23 claims.  "Picking off" § 216(b) plaintiffs delays the point at which any collective action can be provisionally certified.  This stalls notification to potential "similarly situated" parties.  O'Donnell v. Robert Half Int'l, Inc., 534 F. Supp. 2d 173, 177 (D. Mass. 2008) ("A class may be conditionally certified and notified of the pendency of an action only if the putative class members are "similarly situated" with the named plaintiffs.")  The longer it takes for an FLSA class to mature, the lower members' damages will be once they opt in, given the two-year limitations period. See 29 U.S.C. § 255 (2010).  In a parallel situation under Rule 23, the clock for absentees stops upon the filing of a complaint that raises their claims.  Thus, even if employers pick off some

named plaintiffs, the limitations period for absentees pauses while any applicable class action is pending.

The predicament of the opt-ins in this case brings the problem into sharper focus.  Widespread claims involving common issues invite lawsuits in different jurisdictions, as is the situation here.  Note the disparate outcomes this creates for Rule 23 absentees and FLSA opt-ins.  As a practical matter, if a Rule 23 action is dismissed, class members may not have to worry about expiration dates for their claims drawing closer.  If there is another class action underway that allegedly embraces their claims, the automatic tolling rule from Crown, Cork & Seal shelters them.  Opt-ins to collective actions enjoy no such protection.  If the suit to which they have hitched their claims sinks — the result Defendants seek here — the clock starts running again, even if they might be "similarly situated" to the named plaintiff in another pending case.  Thus, as Judge Almond observed:

> [I]f [Defendants were] successful in dismissing the case as mooted, the four plaintiffs who opted in . . . would arguably have to either initiate new individual FLSA actions or join another applicable collective action.  Thus, the tolling of the limitations period for their claims could be delayed and, if they were ultimately successful, their back pay damages could be reduced since the value of their claims is potentially diminished with each passing day.

(R&R at 4-5.)   The point is that FLSA opt-ins are more exposed to the erosion and possible expiration of their claims than Rule 23 absentees.

Simply put, it is easier to drown collective actions than class actions.   If allowed to use Rule 68 as a weapon, defendants can torpedo complaint after complaint, leaving opt-ins to swim for the nearest viable action as their claims leak value.   This justifies a more relaxed mootness standard in FLSA cases than Rule 23 cases, and therefore provides an additional basis for distinguishing <u>Cruz</u>.

## IV.   Conclusion

For the reasons stated in the R&R, and each of those set forth above, the Court adopts the R&R in full.   Defendants' motion to dismiss is therefore DENIED.


IT IS SO ORDERED.



*/s/ William E. Smith*

William E. Smith
United States District Judge
Date:   February 9, 2010

14